IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 01-00339-01-CR-W-HFS |
| | ) |
| HARRY ALLEN CLAYPOLE, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S MEMORANDUM OF LAW FOR
SUPERVISED RELEASE REVOCATION HEARING**

COMES NOW the United States of America, by Todd P. Graves, United States Attorney, and Katharine Fincham, Assistant United States Attorney, both for the Western District of Missouri, and in anticipation of the supervised release revocation hearing set for this defendant, respectfully submits to the Court the following background, facts, points, and authorities which may be salient to the Court's sentencing decisions.

**I.     Background**

The following facts are extracted from the defendant's Presentence Investigation Report, which portions were not objected to by the defendant.

**A.     The Offense**

The defendant is currently serving a three-year period of supervised release for using a facility of interstate commerce, that is, the Internet, to attempt to entice a 16-year-old boy to engage in sexual activity. The only reason the charge is an "attempt" is because the defendant corresponded with undercover officers instead of an actual minor.

In corresponding with what he thought was a minor male, the defendant promoted his actual history as a "long time football and basketball coach" and track coach. In addition to emails sent to the would-be victim, "Robbie," which emails were sent from a computer at a public library, the defendant mailed his desired sex partner a telephone card to allow him to call the defendant directly for future communications.

The defendant assured "Robbie" that "I have been with boys your age and some even a little younger."

The defendant was arrested when he actually traveled to an arranged meeting place for a sexual rendezvous with "Robbie."

### B. The Offender

The defendant has resided in 37 different cities or towns located in the states of Kansas, Missouri, Iowa, and Colorado. The majority, if not all, of his relocations were for new employment positions in different school districts. Claypole has a K-12 (kindergarten through 12th grade) teacher's certificate.

### C. The Supervised Release Violations

*Special Condition Number 7* of defendant's supervised release forbade him from having unsupervised and unapproved contact with any male under the age of 18. The defendant admitted to the polygraph examiner provided by his mandated counseling service that he had set up a chat profile that indicated his sexual preference. The defendant told the examiner that, as a result of what he had put in the profile, he was contacted by and chatted with males who said they were 15-16 years old. The defendant admitted to talking about sex with these males and masturbating during the phone calls.

2

The defendant is denying making these admissions to the polygraph examiner.

*Special Condition Number 8* forbade the defendant from, among other things, having pornographic material. The defendant admits this violation.

*Special Condition Number 9* directed the defendant to successfully participate in any sex offense counseling program as directed by the probation office. The defendant admits this violation.

On December 1, 2004, the defendant was discharged from the sex offender treatment program in which he had been enrolled since June 2004. Records from the program chronicle the following:

– in July 2004, defendant's counselors noted that the defendant was in "some denial" and was taking a "victim stance";

– in August 2004, the counselors recommended the defendant increase his group participation and put more effort into his journal;

– the August report also noted that the defendant said his delivery routes sometimes included schools and other areas where children may be;

– in September 2004, the defendant reported "incidental contact with minors while at work"; and

– by November 2004, the counselors reported that deception was indicated on the defendant's polygraph. They noted defendant's failure to participate in journaling and group therapy. They comment that the defendant is engaging in behaviors that are high risk for re-offending, and that he failed to demonstrate the ability to establish interventions to control arousal and delay gratification.

## II. Authorities

The government believes that the Court should revoke the defendant's supervised release for the significant violations outlined above. However, since the Court has evinced a desire to continue the defendant on supervised release with modifications of his conditions, the government urges the Court to include in those conditions a referral back to treatment and a support of any restrictions imposed by the therapeutic program. The government supplies the following authorities in support of the appropriateness of treatment in general, and of certain restrictions in particular.

### A. Case Law

In United States v. Scott Ristine, 335 F.3d 692 (8th Cir. 2003), the defendant encountered on the Internet an undercover "sting operation" with officers running an apparent "sex tourism" site. Ristine expressed an interest in going overseas to have sex with minors. After he concluded he could not afford the offered trips, Ristine expressed an interest in obtaining child pornography. Law enforcement engineered a controlled delivery of a requested videotape of child sexual activity. Ristine pled guilty to receiving child pornography. One of the special conditions of his supervised release forbade his owning or possessing "any pornographic materials."

Ristine challenged this condition as overbroad and preventing him from access to materials he had a First Amendment right to review. The Appellate Court supported the condition, holding:

"In light of the significant evidence in the record that demonstrates Ristine's obsession with or addiction to child pornography, we believe that the ban on pornography is appropriately

4

tailored to serve its dual purposes of promoting Ristine's rehabilitation and protecting children from exploitation." Id. at 694-95. While the Ristine Court expressed a nondispositive reservation about the vagueness of what "pornography" entails, it did not differentiate between the dangers of adult and child pornography to the defendant's rehabilitation.

Perhaps more factually on point, a case from the Ninth Circuit upheld a special condition that precluded the defendant from possessing "any sexually stimulating or sexually oriented material." In United States v. Bee, 162 F.3d 1232 (9th Cir. 1998), the district court imposed this condition after the defendant pleaded guilty to abusive sexual contact. The defendant appealed this condition, alleging that it infringed on his First Amendment rights and was not reasonably related to protection of the public or his rehabilitation. After noting that the probation officer had said that the condition would effectively address the defendant's "sexual deviance problem," the Court held that the district court did not abuse its discretion in imposing this condition. The Court found it was designed to promote the defendant's rehabilitation and to protect the public. Id. at 1234-35. (See also, United States v. Henson, 22 Fed. Appx 107, 2001 WL 1252511 (4th Cir. 2001) UNPUBLISHED: child pornography distributor with prior for taking indecent liberty with a minor similarly restricted, and restriction upheld for similar reasons.)

In United States v. Crose, 284 F.3d 911 (8th Cir. 2002), the defendant had been convicted in the Western District of Missouri of aiding and abetting the manufacture of methamphetamine. District Court Judge Gary Fenner imposed a condition of Crose's supervised release that he not consume or possess alcohol. Crose's challenge to this condition was denied in a plain error review. The Court noted that alcohol use was related to the defendant's history and "characteristics," including his obvious problem with substance abuse. The Court also noted,

5

"Finally, the treatment centers that Crose will enter following his release from custody prohibit the use of alcohol, and the condition set by the district court is consistent with this rehabilitative aspect of Crose's sentence." Id. at 913.

In a comparable situation, the defendant in the drug case of United States v. Behler, 1887 F.3d 772 (8th Cir. 1999), challenged a supervised release condition restricting his access to alcohol. The Court upheld the condition, observing that the record clearly demonstrated examples of the defendant's personal substance abuse problems. The record also included the probation officer's citation to a report from the National Institute on Drug Abuse that the use of any intoxicants, including alcohol, would limit a person's ability to maintain a drug-free lifestyle. Additionally, the Court found persuasive, as further evidence that alcohol use would hinder the defendant's rehabilitative process, the demonstration that the use of alcohol was inconsistent with the treatment philosophy of most substance abuse recovery programs nationwide. Id. at 779.

Similarly, in Claypole's case, the record is replete with evidence that the defendant has a problem with sexual abuse. If, like Crose and Behler, it is determined that Claypole's access to adult pornography endangers his rehabilitation and successful treatment of his problem, then denied access to this "substance" is justifiably imposed.

**B.     Studies of Child Sex Offenders**

When the United States House of Representative's Judiciary Committee reported out its version of the bill to increase the mandatory sentence for repeat sex offenders (H.R. Rep. 107-373, for H.R. 2146), it cited Department of Justice statistics regarding defendants sentenced for

violent sexual assault other than rape. The Committee then included the following summary in its "Background and Need for the Legislation":

"Compounding this growing problem is the high rate of recidivism among sex offenders. A review of frequently cited studies of sex offender recidivism indicates that offenders who molest young girls repeat their crimes at rates up to 25 percent, and offenders who molest young boys, at rates up to 40 percent. Moreover, the recidivism rates do not appreciably decline as offenders age."

The Protect Act of 2003 extended the potential supervised release term for a sex offender to any term of years or life. In recommending such a change, the House Conference Committee Report addressed to this section of the Protect Act reasoned:

> This section responds to the long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison. The current length of the authorized supervision periods is not consistent with the need presented by many of these offenders for long-term–and in some cases, life-long–monitoring and oversight.

(H.R. Conf. Rep. 108-66, *49).

**III.   Conclusion**

The government is concerned, based upon discussions with the Court and defense counsel in "chambers," that the Court will not order the defendant to continue in counseling or, in the alternative, will not support counselors' restrictions on the defendant.

Although the success rate of rehabilitation of sex offenders of any preference is low, the only hope for such rehabilitation is through established sex offender treatment programs. The defendant has been convicted for "acting out" his sexual preference for underage males. According to the credible evidence, he has continued to engage in behavior that not only violates his conditions of supervised release, but places him at great risk for re-offending. His failure to honestly admit these behaviors to the Court underscores this risk.

Accordingly, absent a revocation of the defendant's supervised release, the government urges this Court to refer the defendant back to treatment and to support whatever conditions for treatment that the sex offender professionals deem necessary to assist the defendant in his rehabilitation, and, consequently, society in its protection.

                                          Respectfully submitted,

                                          Todd P. Graves
                                          United States Attorney

By    *s/Katharine Fincham*

                                          Katharine Fincham #32570
                                          Assistant United States Attorney

                                          Charles Evans Whittaker Courthouse
                                          400 East Ninth Street, Suite 5510
                                          Kansas City, Missouri 64106
                                          Telephone: (816) 426-3122

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of the foregoing was served this 10th day of January 2005, by electronic notice on those parties having entered their appearance under the Electronic Filing System (ECF), and by U.S. Mail, postage prepaid, on those parties having requested notice by conventional service.

| | |
|---|---|
| John Picerno | Darryl Mobley, Probation Officer |
| 1102 Grand Blvd., Suite 800 | Charles Evans Whittaker Courthouse |
| Kansas City, MO 64106 | 400 East Ninth Street, 4th Floor |
| | Kansas City, MO 64106 |

*s/Katharine Fincham*
Katharine Fincham #32570
Assistant United States Attorney

KF/art